2002 ND 149

**DISCIPLINARY BOARD OF the SU-
PREME COURT OF the STATE
of North Dakota, Petitioner**

v.

**Michael E. KELLER, Respondent.**

**Nos. 20010227, 20010305, 20020018–
20020020 and 20020150–
20020153.**

Supreme Court of North Dakota.

Sept. 9, 2002.

PER CURIAM.

[¶ 1] Michael E. Keller was admitted to practice law in the courts of North Dakota on October 10, 1984, and since that time his name has appeared on the roll of attorneys. Keller was suspended from the practice of law on an interim basis on March 28, 2001, and has been suspended since that time. *Disciplinary Board v. Keller,* 624 N.W.2d 667, 2001 ND 63.

[¶ 2] Four Reports of the Hearing Panel involving nine complaints against Keller were referred to the Supreme Court under N.D.R. Lawyer Discipl. 3.1F(2).

### No. 20010227

[¶ 3] Keller was served by publication after disciplinary counsel was unable to personally serve him with the petition for discipline. Keller did not file an answer to the petition, and disciplinary counsel filed a motion for default order which was served on Keller at his last known mailing address. Default was granted on September 14, 2001.

[¶ 4] Keller represented Robin Sposato in a domestic relations matter. On January 10, 2001, Keller signed and filed legal documents in the matter with the district court. Keller did not notify Sposato his license to practice law was suspended effective December 31, 2000.

[¶ 5] Keller violated N.D.R. Prof. Conduct 5.5(a), Unauthorized Practice of Law, and 8.4(e), engaging in conduct enumerated in N.D.C.C. § 27–14–02(3) as grounds for revocation of his certificate of admission to the bar. The Hearing Panel filed its Report on September 19, 2001, recommending Keller be disbarred and that he pay the costs and expenses of the disciplinary proceeding in the amount of $469.71.

### No. 20010305

[¶ 6] On December 21, 2000, the Supreme Court remanded this matter to the Hearing Panel for further proceedings.

*Disciplinary Board v. Keller,* 2000 ND 221, 620 N.W.2d 156 (2000). On March 29, 2001, the Hearing Panel entered an Order to Vacate Default Order and to set the matter for a hearing on the merits of the petition. Keller was notified that a hearing was set for May 22, 2001. The April 23, 2001, Certificate of Service reveals that the hearing notice was mailed to Keller at two street addresses and a post office box in Larimore, North Dakota. Keller did not appear at the hearing nor did he request a continuance.

[¶ 7] Mildred Carlson owned two lots, one with an office building on it. In 1990, Carlson decided to stop paying taxes on the lot without the office building and to let it go for unpaid taxes. After inquiry by Farmers Elevator, Carlson contacted Keller's law firm and requested the firm make sure the correct lot was being sold for taxes. By letter dated April 8, 1996, Keller informed Carlson he had checked on the real estate and it appeared she still owned the property with the office building.

[¶ 8] An Auditor's Tax Deed showed that in 1995 the lot with the office building had been transferred to Grand Forks County. A February 1996 County Deed showed the lot with the office building was transferred to Farmers Elevator. Keller's statement in April 1996 that Carlson still owned the property was incorrect. A December 30, 1996 letter to James Odegard demonstrated that Keller was aware an error had occurred when one of the two lots Carlson owned was reassessed and the wrong lot was sold for unpaid taxes.

[¶ 9] In early 1997, Keller told Carlson that he had prepared papers to remedy the problem and given them to the Sheriff to be served. When Carlson later inquired about the matter, Keller told her the Sheriff was too busy to serve the papers. When Carlson inquired about private process servers, Keller told her they were too busy as well. In 1998, Carlson authorized Keller to contact a national research organization to assist with research in this matter and paid $500 to Keller's law firm. Upon inquiry into the status of the research, Keller told Carlson that the research company was on vacation and later, that the company would not do the research. By the spring of 1999, Keller had taken no action to get Carlson's land back and she terminated his services.

[¶ 10] Keller violated N.D.R. Prof. Conduct 1.1, Competence, 1.3, Diligence, 1.4(a), Communication, and Rule 1.5, Fees. On December 13, 2001, the Hearing Panel filed its Report recommending Keller be disbarred from the practice of law, pay restitution to Mildred Carlson in the amount of $500, and pay the costs and expenses of the disciplinary proceedings $4409.11.

Nos. 20020018—20020020

[¶ 11] Keller admitted service of the petition for discipline on November 15, 2000, and filed an answer on December 5, 2000. On January 9, 2001, disciplinary counsel served interrogatories to which Keller did not respond. Disciplinary counsel then filed a motion to compel answers. Again, Keller did not respond. On May 14, 2001, the Hearing Panel issued an order compelling discovery requiring answers within 10 days. Keller did not comply with the order. On June 11, 2001, disciplinary counsel filed a motion for default order. The Hearing Panel issued an Order of Default, finding Keller in default and providing no evidentiary hearing would be held in these matters.

[¶ 12] Keller was the attorney for personal representative of the Mary Isaacson estate. Assets from the estate were sold in 1998 and the proceeds deposited in the Keller's law firm's trust account rather than in a separate estate trust account.

[¶ 13]  Keller was the attorney for the estate of Eleanor Bye, who died in April 1996.  Richard Bye, the personal representative, terminated Keller's representation in February 1998.  Keller was terminated from his law firm on December 31, 1999.  After Keller was terminated, another attorney discovered that the Eleanor Bye file contained a large amount of correspondence dated within a few days of Bye's death in 1996, which included $20 cash.

[¶ 14]  In September 1997, Vivian Sweeney executed a power of attorney designating Keller as attorney in fact.  During Keller's tenure as attorney in fact, he failed to pay Sweeney's nursing home and pharmacy bills, and did not cash dividend checks dated between January 1998 and June 1999.  From November 1997 through 1999, Keller did not cash Sweeney's monthly social security checks.  Keller did not file Sweeney's 1998 income tax return, resulting in a penalty.  Keller wrote eight checks totaling $3700, one to his law firm for $500, and the remaining to himself.  In light of the services Keller provided, the fees were unreasonable.

[¶ 15]  In April 1999, First National Bank North Dakota became conservator of Sweeney's estate.  Keller was ordered by the district court to furnish a list of all of Sweeney's assets, a full accounting of his activities during his appointment, all bank statements and other account statements received during his appointment, documentation of all bills paid on Sweeney's behalf, Sweeney's 1998 tax information, and documentation of all 1998 estimated tax payments made on Sweeney's behalf.  Keller did not produce the records to First National Bank.

[¶ 16]  Keller violated N.D.R. Prof. Conduct 1.15(a), (b), Safekeeping Property, 1.3, Diligence, 1.16(e), Declining or Terminating Representation, 1.5, Fees, and 8.4(e), engaging in conduct enumerated in N.D.C.C. § 27–14–02(3) as grounds for revocation of his certificate of admission to the bar.  The Hearing Panel filed its Report on January 17, 2002, recommending Keller be disbarred from the practice of law and that he pay the costs and expenses of the disciplinary proceedings in the amount of $555.

### Nos. 20020150—20020153

[¶ 17]  Keller was served by publication after disciplinary counsel was unable to personally serve him with the petition for discipline.  Keller did not file an answer.  Disciplinary counsel filed a motion for default order and served the motion on Keller at his last known mailing addresses.  Keller did not respond to the motion and the Hearing Panel granted the default on June 15, 2002.

[¶ 18]  Gregory Atchley retained Keller to represent Atchley in his divorce.  By October 2000, the parties had reached an agreement but Keller never completed the matter.  Atchley spoke with Keller in January 2001 and was told that Keller had filed the stipulation and Atchley should hear something within a week or so.  Atchley then began leaving phone messages which Keller never returned.  Atchley then learned that Keller's license to practice law had been suspended; Keller had not informed Atchley that effective December 31, 2000, Keller was not licensed to practice law.

[¶ 19]  On December 23, 1996, Keller was appointed trustee for the Adolph Johnson trust.  Under the trust, income from the sale of farm land was to be distributed to Mendora Fladager during her lifetime as income became available.  In 1999, the trust had income available in each of 10 months; Fladager received only four payments. In 2000, Fladager received $2,150 in payments;  however, Keller paid himself $3,466.58.

[¶ 20] Keller told Fladager that some of the trust funds were being invested. It was later discovered that some of the trust funds were in a growth account with Prudential Securities, and some of the funds had been deposited with Piper Jaffray. Keller did not complete any accountings for the trust. Checks from Piper Jaffray and American Adjustable Term Trust Litigation were uncashed. Further, Keller did not properly prepare income tax returns for the trust for 1996, 1997, 1998, and 1999. Keller under-reported trust income, trust fees, and dividends and failed to report capital gains, resulting in tax penalties.

[¶ 21] Keller had power of attorney for Michael Moore for North Dakota land owned by Moore and his siblings. Keller was to collect and distribute rent from the land and pay taxes. Additionally, Keller was to pay himself $1000 per year. In 1997, Keller prepared an income and expense summary which reported that he paid $2,255.03 in taxes, when in fact, only $1,217.76 was paid. Keller also reported that he paid himself $900 when he paid himself $3,350. In 1998, 1999, 2000, and 2001, Keller paid himself $3,600, $10,400, $6,500, and $2,300, respectively. Keller did not provide accountings for 1999 and 2000. Moore last spoke with Keller in November 2000 when Keller told Moore he would send an accounting. Moore never received the promised accounting.

[¶ 22] Later, Moore tried to contact Keller but he could not be reached by phone. On March 5, 2001, Moore wrote Keller to terminate his representation. Moore was never told that Keller's license to practice law was suspended effective December 31, 2000.

[¶ 23] Keller violated N.D.R. Prof. Conduct 1.3, Diligence, 1.4, Communication, 1.5(a)(4), Fees, 1.15(b), Safekeeping Property, N.D.R. Lawyer Discipl. 1.2A(3),

engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and N.D.R. Prof. Conduct 5.5(a), Unauthorized Practice of Law, and N.D.R. Lawyer Discipl. 6.3A, Notice Required. The Hearing Panel filed its Report on June 17, 2002, recommending Keller be disbarred from the practice of law and that he pay the costs and expenses of the disciplinary proceedings in the amount of $448.20.

[¶ 24] Under N.D. Stds. Imposing Lawyer Sanctions 4.11, disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. Under Standard 4.41(c), Lack of Diligence, disbarment is appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. Under Standard 4.51, Lack of Competence, disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures and causes injury or potential injury to a client. Standard 4.61, Lack of Candor, provides that disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another and causes serious injury or potentially serious injury to a client.

[¶ 25] Under N.D. Stds. Imposing Lawyer Sanctions 7.0, the unauthorized practice of law is a violation of a duty owed to the profession. Standard 7.1 provides disbarment is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

[¶ 26] Under N.D. Stds. Imposing Lawyer Sanctions 9.22(a), prior disciplin-

ary offenses constitute an aggravating factor. Keller has the following disciplinary history: Public Reprimand for violation of N.D.R. Prof. Conduct 8.4(d), *Disciplinary Board v. Keller,* 502 N.W.2d 504 (N.D. 1993); admonition for violation of N.D.R. Prof. Conduct 1.1 and 1.4; consent probation for violation of N.D.R. Prof. Conduct 1.1 and 1.3; and admonition for violation of N.D.R. Prof Conduct 3.5(b). Further, Keller did not comply with the Hearing Panel's Order Compelling Discovery which is an aggravating factor under Standard 9.22(e). Finally, Keller has substantial experience in the practice of law which is an aggravating factor under Standard 9.22(i).

[¶ 27] **ORDERED,** the Reports of the Hearing Panels of the Disciplinary Board are adopted and Michael E. Keller is DISBARRED from the practice of law, effective immediately.

[¶ 28] **FURTHER ORDERED,** Michael E. Keller pay restitution in the amount of $500 to Mildred Carlson.

[¶ 29] **FURTHER ORDERED,** Michael E. Keller pay the costs and expenses of these disciplinary proceedings in a total amount of $5,882.02.

[¶ 30] VANDEWALLE, C.J., and KAPSNER, SANDSTROM, NEUMANN and MARING, JJ., concur.